Good morning, your honors. May it please the court. Lisette Pino on behalf of Mr. Anderson. I would like to reserve five minutes for rebuttal and I'll keep track of my time. At sentencing, the district court committed two legal errors that not only impacted its assessment of the 355 3a factors, but also increased the loss amount and the restitution award by two million dollars. First, the district court adopted an incorrect fraud by omission theory. It held Mr. Anderson had a duty to affirmatively disclose the financials of his privately held company to prospective investors. Now that ruling is so wrong, the government does not even defend it on appeal, and for good reason. This court's decision in Shields is very clear that a duty to disclose cannot exist in the absence of a fiduciary or special trust relationship between the parties. And here, under California law, Mr. Anderson did not owe any such duty to prospective investors. The second error is that the district court failed to resolve Mr. Anderson's factual objections to the loss amount in violation of Rule 32, which independently warrants a remand for resentencing. But I'd like to start with the fraud by omission argument, because the district court's loss amount finding really was predicated on that error. The district court calculated loss by assuming that every investment after the scheme began was fraudulent. But it was difficult in this case to determine the exact date on which the scheme began, because everyone, including the government, conceded that MB had operated lawfully for a time. So to pick that date, the district court theorized that it should look to the first clear instance of fraud, and that was a September 2011 email that Mr. Anderson sent to an investor named Clark Colvis. This is the one that starts, as discussed, we are all very, very excited about the YouTube Google deal. We have worked very hard for this. Yes, Your Honor, which we concede was a misrepresentation. But the error the district court committed is it assumed that everyone who invested after that date had a right to know that Mr. Anderson had sent that email and received $300,000 fraudulently. And that's just not correct under Shields. There has to be a finding of a special relationship. A pure omission without such a relationship is not enough. And here, the real problem is that while Mr. Anderson did have a relationship with some investors, many prospective investors, there's actually no evidence he knew them before they invested at all. So there's not much of a factual basis to support the finding, even of an informal trust relationship, which Shields recognizes is permissible. So to give the court just one example, Philip Buchanan, I believe, invested in November 2011, two months after this email. There's nothing in the record that explains how this person knew Mr. Anderson. He's not mentioned in the PSR. There's no victim impact statement. There's no FBI interview record. And so from that, there's really nothing that can support a trust relationship finding. Let me ask you this, counsel, and this relates to the Rule 32 issue as well. Would this have made any difference in the sentencing imposed in this case? The court really kind of focused on, rather than the actual numbers and determining the sentence, which you're raising as part of this appeal, that the range is more important than the actual number. So even if we reduce it by, you know, $1.5 or $2 million, he's still in the same sentencing range. Is that right? Yes. And the court stayed within the range in imposing the 88-month sentence? Yes, Your Honor. And so that's why we're not racing a strict procedural guidelines error argument. We're rather arguing that these errors ultimately impacted the district court's consideration of the 355-3A factors. And so what the court referenced when the district court said, I don't need to calculate the loss amount with precision, that's at the part of the record where the district court was arriving at its guidelines calculation. But it then goes on to consider the 355-3A factors. I think this is around ER 182. But it goes on to consider the 355-3A factors and it talks about the length of time the offense went on and the number of victims, both of which were impacted by this error. Because since the date on which the scheme began was moved up, seven more victims were counted and the length of the offense increased by over a year. Counsel, when I look at the district court's overall remarks at sentencing and I'm looking for, excuse me, right now for example at ER 245 and 246, when we look at the offense, we see an egregious offense that was inflicted on multiple victims over an extended course of time. It's quite sophisticated. It's not just sophisticated, but it's deliberateness, it's calculatedness, and it's extension of time. This wasn't a one-time deal or a moment's sort of reflection or misjudgment, but an extended scheme to defraud multiple people over multiple years. People have lost their life savings. It has wreaked a great amount of hardship. I mean, it seems to me that the court was looking at the facts here at a high level as exemplified in what I just read, so it's hard for me to see sort of echoing Judge Nguyen's question that even if theoretically you might be right, I'm not saying you are, that that really had an impact given where the district court was. Why is my view of that wrong? Well, Your Honor, two points. First, the district court did recognize some mitigating circumstances in this case, one of them being right after what Your Honor read at ER 246, that this is a case where the money was not just used for self-aggrandizement, and in fact the bulk of the money received for investors went back into the company in an effort to save it. And because of that, the district court did seriously consider the downward variance that probation had recommended to a term of 42 months. My second point is that, but I think that point undercuts your argument, because what it does show is the district court really thoroughly considered the nature of the offense, the mitigating circumstances that were raised and argued, as well as the aggravating factors, and did a pretty thorough analysis. I'm not going to repeat all of that, including what Judge Bennett read, but it was a very thoughtful, thorough consideration of the 3553A factors, as is reflective of a case of this magnitude, a pretty thorough sentencing hearing. And so, that sort of wholesome, holistic evaluation coupled with the district court's clear view that it's the resulting offense level adjustment, it's more important than the precise number, sort of shows it's not two million dollar loss wouldn't have really made the difference. It's the pattern of deceit and conduct and the number of victims and the other circumstances that really drove the sentencing. Yes, Your Honor, what I think I'm trying to say is not that, this is not a case where the legal error the district court committed resulted in a new aggravating fact. It just made the facts more aggravating. It meant that there were 30 victims instead of 23. That the offense went on for seven years rather than six. It meant that, you know, in an eight million dollar case, two million dollars were added wrongfully. So the offense level, so the amount increased from six to eight million. And this is my second point, the premise of the fraud guidelines is that it matters how much loss the defendant costs. That's relevant to his culpability. Sure, and sometimes that argument works on sentencing. Certainly, I'm sure you've seen, we have on multiple occasions remanded for resentencing where the error over inflation of loss, for example, may have driven the considerations in sentencing or we can't tell one way or the other because you're starting at a point that may have been erroneous. I'm not sure if there was error because we're still reviewing it for clear error in this case. But even assuming error, sometimes we do send it back for that. I am having a hard time adopting your argument under the factual circumstances of this particular case, I guess is what I'm trying to say. I understand the court's position. Another argument we've raised in favor of reversal is the Rule 32 argument. And this court does require strict compliance with Rule 32, so that error in and of itself is sufficient to warrant resentencing. And that error we're on plain error review? Yes, yes we are. But there's three objections here that the district court really did not resolve. So Mr. Anderson objected to the loss amount as a whole and he did so for three reasons. He argued that certain investments, even though they had happened after the date in which the scheme began, were not related to the scheme. He had received that money for other purposes. And so we've raised that argument as to Mr. Silverman and Mr. Ziker. As to the Dillies, Mr. Anderson argued that some of their investments had not been substantiated. And so that's about a 1.5 million difference in the loss amount as well, and it also impacted the restitution order by about $1.15 million. So these were factual objections and Rule 32 required an express ruling. The government has not pointed to anything in the record that could constitute such an express ruling. And I'll give the court one example. For Anthony Ziker, Mr. Anderson said, I received this money from Mr. Ziker as payment to produce a series for children called Mysteriopolis, which no one went out into the world. And the question for the district court was, why did Mr. Ziker send these $50,000 to Mr. Anderson? And nowhere in the sentencing record is that resolved. So that is a plain error that warrants reversal. If the court has no further questions on this point, I'll reserve the rest of my time for rebuttal. Counsel, I have a question for you. Yes, Your Honor. I would just like to hear your perspective on the standard of review that we must apply. I mean, normally sentencing issues are reviewed for an abuse of discretion. Tell me, how do you deal with that standard in connection with a complex business knowledge fraud that we've got before us? Yes, Your Honor. Well, the Rule 32 error is a legal error that this court reviews de novo. Of course, it's also under the plain error standard. But I think Your Honor is asking about the substantive unreasonableness argument that we've made. And so under RESM, when a district court makes a clear error of law that impacts the overall sentence, that is an abuse of discretion. So it is an abuse of discretion argument, but the underlying legal claim we're raising is subject to de novo review. Okay, thank you. Thank you. May it please the Court, Elizabeth Berenger for the United States. The court should affirm the sentence and restitution order in this case. The defendant here received a guideline sentence for his second federal fraud conviction after receiving a light sentence the first time around. Everyone agrees that the guideline range was correct in this case. The defendant is now challenging the substantive reasonableness of his sentence based on what he claims is error in calculating the guideline range. And in making this claim, he's conflating the distinct standards in Gall and Cardee for reviewing the reasonableness of a sentence. He wants to import this court's less deferential and highly technical review of guideline error to its substantive reasonableness review, but without harmlessness. And this hybrid approach of attacking the reasonableness of a sentence overlooks both what this court has acknowledged, I think all three panel members, in the substantial discretion given to the district court, as well as the holistic approach that Judge Nguyen mentioned. The defendant is also raising some procedural challenges to his sentence, none of which were presented to the district court below, and none which arise to plain error. And unless the court wants me to address these in a different order, I plan to first address the reasonableness of the sentence, then the Rule 32, and finally the restitution order. I think the court obviously has a good handle on the government's arguments in the reasonableness avenue. Remind me of what range the offense level resulted in. He got an 88-month sentence, so I have to look at it. And that's on the mid-range? He got a mid-range, yeah. So if we're taking the substantive reasonableness at first value, the court must defer with the substantial discretion, and under that lens, it must affirm for several reasons. One, the sentence fell within the correctly calculated range under CARDI. The overwhelming majority of cases that fall within a guideline range will be affirmed as reasonable. Second, as this court recognized during my friend's argument, the choice of sentence and the assessment of the seriousness of the offense was supported in the record, both in ER 245-50, there were factual assertions that were pretty much uncontroverted. I mean, the defendant agreed that after 2013, all the investments, or nearly all of the investments, were fraud. He doesn't dispute his prior conviction. He doesn't dispute that he took advantage of unsophisticated investors, that he used the perpetual use of lies in these doctored documents based on his past financial experience to entice these people to invest. But a really important point is that the fact-finding on relevant conduct here, whether or not these disputed investments counted as relevant conduct under the guidelines, the district court could still consider them. And I point this court to its decision in Christensen. It can consider it under 3553A, under Pepper, under 18 U.S.C. 3661. All of those other investments that are bound up in this offense, even if they're not strictly relevant conduct, they can still be considered by the district court in its substantive reasonableness analysis. And as Judge Nguyen mentioned, I think this court's well aware, that these disputed losses, 6 million versus 8 million, did not drive this sentence. That's not why the district court chose the sentence it did. In fact, it said it believed that loss was overstated in the guidelines, and it was going to give a discount because it thought that the guidelines overemphasized it. So 8 versus 6 didn't matter. There may be a decision where it's, you know, the next range is 9.5 to 25. There could be a situation where a court finds 25 versus 9.5. That can make more of a difference than here, where it's 8 versus 6. And as far as the clear error, I did want to address one point. I think our brief discusses our view. I mean, we're not deciding whether all of these individual investments were wire fraud. The government's brief sets out our belief on the pre-2013, the Zucker and Dilley investments, but I did want to spend some time on Mr. Silverman, briefly, because it also impacts the restitution order. But Mr. Silverman, as the record reflects, is over 90 years old, which shows the type of investor that Mr. Anderson was deceiving, and he gave a very clear example of the type of investor that he was. He gave a statement to the FBI saying he'd invested $1.1 million and suggesting it was all in Cosmic Toast in 2017. But obviously, he is an older gentleman, and that was not reflected, really, in the bank records. I want to direct the court's attention to... I thought on this one, it did go into a bank account that was associated with Cosmic Toast, but then there were subsequent transfers out of that? Well, Your Honor, I want to direct you to ER-473, and it's interesting because the large bulk of the money that he transferred into went to FONLAW Law accounts. ER-473. And if you look at 473, and then you compare it to the FONLAW Law bank records on 803, 804, 805, 806, you see that he's actually making over $700,000 of investments into FONLAW Law between 2013 and 2015. So he's not just sending money to Cosmic Toast, he's sending money into accounts controlled by Andersons under the auspices of his company. And I want to show you that, I mean, the Grossmans are also sending money into those other accounts that the money was wired into for Mr. Silverman. That's at, if you compare 471 to 473 of the record. But as far as Cosmic Toast just being this sort of independent company, there's plentiful evidence in the record that not only was it the same temporal time as the conspiracy, I mean, as a scheme, which is what this court looks at to see if it's relevant conduct, but you look at all the other investors. And PSR-27, the Delfanis, talked about that Cosmic Toast was one of the defendant's companies and they were aware of it. Hess paid a check to Cosmic Toast on 7-4-15. He was like a main recruiter and one of the more substantial investors. That's on ER-961. And of course, the government's brief references Jack Dilley. Jack Dilley was, you know, toured around the company and shown the company, given false profit statements, showing that Cosmic Toast was turning a profit. That's PSR-49. So we have, this company is bound up in the same companies. And Silverman was not just contributing to Cosmic Toast, he was doing it to a lot of other ones. If the court doesn't have other questions about the substantive reasonableness, I'm going to briefly move on to the Rule 32 issue. Of course, as this court recognized, it is plain error. It's the defendant's burden to show both clear and obvious error, as well as it affects his substantial rights. It's our view that the court did expressly deal with the objections on loss and the defendant is demanding a level of granularity in how the court addresses loss that is not required by this court's precedent. I direct this court's attention to, I'm going to butcher this name, I apologize in advance, Guajira Guna Rata, it's Dr. J case, which both Judge Gould and Judge Nguyen decided. It stated that overruling a loss amount is enough to satisfy the court's duties in deciding a Rule 32. And here, the court did something interesting. It sustained the loss in part. So in sustaining the loss in part, it recognizes that there are other objections that the defendant has made to loss, which it is not sustaining. And so it recognized that there are other objections. Another thing is, in addition to expressly dealing with this, the court also said the precise number of loss isn't as important because I've already given the defendant what he wants, which is to get below the $9.5 million. So he is expressly recognizing that further fact-finding is not required in this instance because everyone agreed it's above $3.5 million. And then, of course, the same arguments for the substantive reasonableness go into the third prong because the defendant cannot show a reasonable probability it would have changed the sentence. None of the loss didn't drive the sentence for the reasons I mentioned earlier. If the court doesn't have any further questions on Rule 32, I'll just briefly cover restitution. I did want to talk about the standard of review just for a brief second because it's disputed. And like Judge Bennett mentioned in the first argument this morning, it was a different material objection at the sentencing when they were — as far as Silverman's objection, I'm sorry, to be more clear. When the defense was objecting to the inclusion of Silverman's loss, I want to direct the court's attention to 322 and to 275. In both of those cases, the defendant argues, absent of showing that Mr. Anderson fraudulently induced Mr. Silverman to continue to invest in Cosmic Toast, his former company, the funds he provided should not be considered. So it was the same objection that he was making to that pre-2013 investments, that there was no evidence that he had caused anyone to — or fraudulently induced anyone. So that was the objection that the district court was resolving. All of the parties thought he resolved that objection, which is evidenced by the fact that there was an agreement to the restitution for Silverman. There was no relodging of that argument at restitution. So the government believes that this is, under Olivas, this court's recent decision, Olivas, because he made a different objection, it's a plain error. I did also want to highlight that there is this disparity between the loss finding at sentencing and loss finding at restitution. And as this court has recognized, those are different analyses. And one of the reasons that they're different analyses is that loss doesn't include any sort of payments after the fraud is detected versus restitution does. And there was an exchange of extensive documentation, probably with respect to Dilley, and that might have accounted for some of the differences. But more importantly, and this is the government's main point, is that the court decided at sentencing that further fact-finding on loss wasn't important after it made that loss determination. And so, but it was important at restitution because it was mandatory. And so it had to delve into the loss in a way that it didn't have to delve into it at sentencing. So if there are no further questions from the panel, I would ask the court to affirm the sentence and the restitution order. Thank you, counsel. In the brief time I have left, I'd like to make a few points about Mr. Silverman. The first is, so under the MVRA, legally, the government was required to show that Mr. Silverman was the victim of criminal conduct by Mr. Anderson. Now, nothing in Mr. Silverman's FBI interview, which is the only explanation we have for why he invested in Funlala or Cosmic Toast or whatever company we want to call it, nothing in that FBI interview indicates that he was defrauded. He says that he cannot remember what he was told. And so the only reasoning under which that award can be upheld is a fraud by omission theory, which, as I've already explained, legally fails. So that's one reason to strike down the restitution award, as to Mr. Silverman. The other reason to strike down the restitution award is that the MVRA requires that the conduct be part of the same scheme as the scheme of conviction. And as we've noted, Cosmic Toast had a different CEO. There's very little information in the record about Cosmic Toast. Certain victims heard about Cosmic Toast at periods of time, but the PSR says very little about how Mr. Anderson acquired Cosmic Toast. The parties agreed that he received it from Mr. Silverman. He actually purchased it from Mr. Silverman at one point. The government concedes that in their sentencing brief at ER 301, footnote 10. But beyond that, there's very little about it, in part, I think, because so many of the victims purchased shares of MBIE and not shares of Cosmic Toast. So they were essentially separate, even though they occurred at the same period of time. And finally, just to quickly touch on the Rule 32 point, I will also butcher the name Wejigunaratna. But I think that case is different, because there, the district court showed that it was aware of the objection, and it adopted the PSR in response to that objection. Whereas here, the district court did not seem to be aware that there were objections to the loss amount that went beyond the date. So I think a fair reading of the sentencing transcript shows that the district court was under the impression that once it picked a cutoff date, the entire issue was resolved. And I think that is clearest, I'm not going to find the specific page, but I think that is clearest if the court looks at the portion where the district court actually calculated the loss Thank you. Thank you very much, counsel, for both sides for your argument this morning. And special thanks and congratulations again to our Courtroom Deputy, Bonnie Cates. We are in recess until 9 o'clock tomorrow morning, and this last matter is also submitted. All rise. This court for this session stands adjourned.
judges: GOULD, NGUYEN, BENNETT